```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
           Civil No. 13-3240(DSD/JSM)
```

Jennifer Jueneman,

       Plaintiff,

v.                                                    **ORDER**

Union Security Insurance
Company, doing business as
Assurant Employee Benefits,

       Defendant.

    Jacob R. Jagdfeld, Esq. and Johnson Becker PLLC, 33 South
    Sixth Street, Suite 4530, Minneapolis, MN 55402, counsel
    for plaintiff.

    S. Russell Headrick, Esq. and Lathrop & Gage LLP, 2344
    Grand Boulevard, Suite 2200, Kansas City, MO 64108,
    counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Jennifer Jueneman and defendant Union Security Insurance Company d/b/a Assurant Employee Benefits (USIC). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion by defendant.

## BACKGROUND

This insurance benefit dispute arises out of USIC's denial of long-term disability benefits to Jueneman. In 2008, Jueneman was a personnel recruiter for Flagship Marketing, Inc. Her position entailed screening job candidates, referrals, and clients, and

required sedentary to light exertion. Admin. R. at 2143-44. Jueneman had disability insurance through USIC policy number G 5,295,764 (Policy) provided through her employer. Id. at 1. The Policy expressly grants USIC the "authority to determine eligibility for participation or benefits and to interpret the terms of the policy." Id. at 25.

On August 16, 2008, Jueneman suffered a shoulder injury for which she sought medical attention a few days later. Id. at 330, 2584. Jueneman was initially treated by Dr. Worenzoff at Tria Orthopaedic Center, who diagnosed her with a shoulder contusion and referred her to a chiropractor. Id. at 2584, 2604. After a few weeks without improvement, Dr. Worenzoff referred Jueneman to Dr. Braman, a shoulder specialist at Tria. Id. at 2582. Dr. Braman recommended physical therapy, which also did not help Jueneman's pain. Id. Jueneman was then referred to Dr. Nadine Maurer, a chronic pain specialist with Park Nicollet. Id. at 2602. Dr. Maurer noted the impression of shoulder pain, right upper extremity, and myofascial pain syndrome (MPS). Id. She prescribed physical therapy and neurontin for nerve pain. Id. Dr. Maurer also prescribed stellate injections, but Jueneman reported no resulting improvement. Id. Jueneman continued to work during this time.

In January 2009, Jueneman filed a claim for short-term disability benefits, claiming that she was unable to work due to

the limited use of her right arm and shoulder. <u>Id.</u> at 346. Dr. Maurer supported the claim, diagnosing Jueneman with complex regional pain syndrome (CRPS) (also referred to as RSD), cervical and shoulder pain, and MPS. <u>Id.</u> at 339. Dr. Maurer recommended full medical disability for three months followed by an evaluation of Jueneman's ability to return to work. <u>Id.</u> USIC paid Jueneman short-term benefits based on Dr. Maurer's recommendation. Id. at 341. Jueneman remained on disability past the three-month period and her claim transferred to USIC's long-term disability department. Id. at 348-50. USIC informed Jueneman that it would continue to monitor her claim and would require her to provide updated medical records as proof of continuing disability. Id. at 349.

Jueneman continued treatment with Dr. Maurer, who prescribed medication for the pain and physical therapy. Id. at 2335. In June 2009, Jueneman's physical therapist noted "[i]mproved tolerance" and "good response" to treatment. Id. at 2337. On June 19, 2009, Dr. Maurer noted normal strength in the upper extremities. Id. at 2335.

In December 2009, a consulting physician reviewed Jueneman's file on behalf of USIC and concluded that Jueneman's "pain complaints are out of proportion to her physical findings." Id. at 2192. The physician recommended a functional capacity evaluation (FCE) to determine Jueneman's residual work capabilities. Id. at

3

2193. Dr. Maurer reported to USIC that Jueneman was medically stable and capable of participating in the FCE. Id. at 373.

USIC contacted Jueneman and requested that she participate in the FCE. Id. USIC also informed Jueneman that Dr. Maurer believed that she was capable of participating in the FCE. Id. Jueneman reportedly became upset at the prospect of the FCE and expressed concern that Dr. Maurer had made "too many mistakes." Id. at 373, 377. Jueneman indicated, for the first time, that she wanted to replace Dr. Maurer with another physician. Id. at 377.

The FCE took place on January 4-5, 2010. See id. at 2197-222. The FCE examiners concluded that Jueneman was capable of performing light work given her ability to lift and carry 15 pounds, with frequent sitting and occasional standing. Id. at 2207, 2211. The examiners further concluded that Jueneman was "capable of sustaining the Light level of work for an 8-hour day/40-hour week." Id. at 2207. USIC sent the FCE to Dr. Maurer and asked her to review the results. Id. at 685. Dr. Maurer was no longer Jueneman's physician, however, and she did not respond to the request. Id.

In February 2010, Jueneman began treatment with Dr. Margaret Guthrie at United Pain Center. Id. at 1984. Dr. Guthrie diagnosed Jueneman with unspecified myalgia, myostosis, and RSD in the upper and lower limbs. Id. at 1992. In March 2010, Jueneman was in a car accident, which worsened her symptoms. Id. at 1993.

After learning that Jueneman was now being treated by Dr. Guthrie, USIC sent the FCE to Dr. Guthrie for review and comment. Id. at 685. On June 15, 2010, Dr. Guthrie responded by indicating that she agreed with the FCE's determination that, although Jueneman could not work full-time right away, she could ultimately do full-time work at light and sedentary levels. Id. In July 2010, Jueneman became "quite hostile" because Dr. Guthrie had not contradicted the FCE. Id. at 2010. Jueneman told Dr. Guthrie that she should inform USIC that she is totally disabled.[1] Id. When Dr. Guthrie declined to designate her as disabled, Jueneman became angry and told Dr. Guthrie that she wanted a new doctor. Id. at 2011. Dr. Guthrie consulted with two colleagues, both of whom agreed that designating Jueneman as completely disabled would be tantamount to fraud in light of the FCE. Id. Dr. Guthrie reported this conversation to Jueneman, who remained hostile and continued to demand a disability designation. Id. Dr. Guthrie then told Jueneman that she could no longer treat her due to her hostility and rudeness, which violated her patient contract with United Pain Center. Id. Jueneman began seeing Dr. Kenneth Britton in October 2010. Id. at 1719. Dr. Britton concluded that Jueneman suffered from RSD and recommended continued physical therapy, chiropractic care, pain medication, and psychological therapy to help with pain

---

[1] Jueneman refused to undertake another FCE even though the intervening car accident arguably adversely affected her health. Id.

management.  Id. at 1722.  Dr. Britton did not place any restriction on Jueneman's ability to work.  See id. at 1698-726. After consulting with Dr. Britton, USIC proposed a return-to-work program for Jueneman under the Policy's Quality of Care provision. Id. at 557-58, 1699.  On July 29, 2011, USIC sent a letter to Jueneman explaining the return-to-work program and specifically stating that Jueneman's failure to comply with the plan without good cause would result in termination of her disability benefits. Id. at 557-58.  The letter directed Jueneman to Edina Saunders Therapy Center (Saunders) for a five week work-hardening therapy program beginning on August 18, 2011.  Id. at 558.  The letter cautioned Jueneman that "if you fail to attend or fully participate, we will not pay benefits."  Id.

Jueneman did not appear for the first appointment at Saunders and USIC discontinued benefits.  Id. at 559-61.  Jueneman appealed, claiming that she never received notice of the program.  Id. at 572.  USIC reversed its decision because it could not disprove Jueneman's claimed lack of notice.  Id. at 573.  USIC then rescheduled the work-hardening program to begin on November 10, 2011.  Id. at 580.  USIC again cautioned Jueneman that the failure to comply with the program absent good cause would result in the termination of benefits.  Id. at 579.  It is undisputed that Jueneman did not complete the program; her attendance was poor and she often arrived late and left early.  Id. at 1593-1638, 1676.

6

Jueneman complained that pain and exhaustion prevented her from fully participating in the program. See id. at 1594. Surveillance footage taken during the period of the work-hardening program, however, does not support Jueneman's claimed incapacity. See ECF No. 27, Ex. B.

In December 2011, Jueneman began treatment with Dr. Andrew Will of the Twin Cities Pain Center. Admin. R. at 594. Dr. Will noted that Jueneman's physical limitations, based on her subjective reports of pain, were the same as her "previous report of ability to lift up to 10 pounds and perform occasional standing/walking with sitting and the ability to change positions frequently." Id. at 745. Dr. Will concluded that due to Jueneman's subjective pain complaints, "it is unlikely [she] will be able to engage in any substantial gainful employment in the foreseeable future *but this is unfortunately not supported by her physical findings*." Id. (emphasis added).

USIC requested an external file review by a board-certified doctor, Dr. Janine Sheppard. Dr. Sheppard reviewed Jueneman's claim file, including all medical records through March 29, 2012, and surveillance footage from September 2009 and December 2011. Id. at 637-54. Dr. Sheppard stated that "the most appropriate diagnosis is chronic pain syndrome," which is a label for a collection of symptoms where there is no proven pathophysiology. Id. at 654. Dr. Sheppard also noted that there is no "objective

evidence on physical exam of any neuromuscular or joint deficits" and that Jueneman is "limited by only subjective complaints of pain and poor tolerance for activities." Id. She concluded that Jueneman can "perform full-time work within the sedentary to light duty range with lifting up to 15 pounds" and that it would be "reasonable to assume that [she] could use her right forearm/wrist/hand for phone/mouse/computer activities that were not constant throughout the day."[2] Id.

USIC then contacted Jueneman's former employer, who confirmed that Jueneman could perform her previous position with the limitations noted by Dr. Sheppard. See id. at 668-69. USIC concluded that because Jueneman was qualified and physically capable of returning to work in her own occupation, she was no longer disabled under the Policy. Id. at 669. On June 28, 2012, USIC sent Jueneman a comprehensive letter explaining the basis for its decision and detailing her medical history. See id. at 679-95. USIC recounted Jueneman's claim that she was not able to complete the work-hardening program because she was only able to attend a portion of the sessions due to her disability. Id. at 690. USIC explained that Jueneman was required to provide proof of good cause for not completing the program and that she failed to do so. Id.

---

[2] USIC attempted to determine whether any psychiatric condition affected Jueneman's ability to work, but she would not authorize the release of her psychiatric records. See id. at 398-400, 717-20, 373.

In making this determination, USIC balanced the objective medical data against Jueneman's subjective complaints.[3]  See id. at 679-95.

Jueneman appealed the decision, arguing that Dr. Will's determination that she is unable to work is dispositive.  Id. at 751.  She did not submit new evidence in support of her appeal.  See id. at 751-52.  USIC referred the appeal to a consulting physician to determine whether Jueneman had a disability that prevented her from completing the work-hardening program and from returning to work.  Id. at 753.  Dr. Elizabeth Engelhardt comprehensively reviewed Jueneman's file and concluded that the medical records "do not support physical limitations from the claimant's work hardening program" and that if Jueneman fully participated in the program, "she would have been physically capable of performing sedentary and/or light work ... on a full time (8 hours/day, 40 hours/week) basis after completion of the program on 12/30/11."  Id. at 778.  Dr. Engelhardt specifically noted that Dr. Will did nothing to corroborate Jueneman's subjective pain complaints and did not address the issue of her failure to complete the work-hardening program.  Id.

---

[3]  USIC's determination is consistent with that of a social security administrative law judge (ALJ).  In May 2012, the ALJ denied Jueneman's disability claim, finding that she was capable of performing light work with limitations.  Id. at 1251.  The ALJ noted that Jueneman's "self-imposed subjective limitations" were not "corroborated by the evidence" and "not credible."  Id.  Jueneman subsequently filed a second social security claim on different grounds.  The parties agree that the latter claim is irrelevant to the instant matter.

USIC also performed a transferrable skills analysis and determined that based on Jueneman's education, training, and experience, she had the skills to work in several industries. Id. at 796-97. USIC also conducted a labor market survey which revealed that there were numerous jobs available within Jueneman's skill set and geographic area. Id. at 802-15.

Based on Dr. Engelhardt's findings and the transferrable skills analysis, USIC denied the appeal finding that (1) Jueneman is "no longer prevented from performing a gainful occupation" and (2) she failed to comply with the work-hardening program without good cause. Id. at 819.

Jueneman filed a second appeal on May 15, 2013, again arguing that USIC erred in disregarding Dr. Will's determination that her subjective complaints of pain prevented her from working. Id. at 1052. Jueneman also submitted updated medical records. Id. at 1051. USIC's Disability Claims Appeals Committee reviewed the appeal, including all historical and newly submitted medical records. See id. at 1066-76. On June 20, 2013, USIC denied the appeal for the following reasons: (1) Jueneman did not meet the definition of disability during the first 36 months she received benefits because she was capable of performing the material duties of her regular occupation, (2) Jueneman did not meet the definition of disability after the first 36 months she received benefits because she was capable of performing any gainful occupation within

her education, training, and experience, and (3) Jueneman failed to complete the work-hardening program without good cause. Id. at 1068-69.

On October 13, 2013, Jueneman filed this suit alleging that USIC wrongfully refused to pay her benefits under 29 U.S.C. § 1132(a)(1)(B).

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute

11

exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.   Denial of Benefits**

Under ERISA, a plan participant may bring a civil action to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). Because the Plan gave USIC discretion to construe the terms of the Plan, its decision is reviewed under the abuse of discretion standard. Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004).

Jueneman argues that USIC's decision should be evaluated under a less deferential standard of review because there is a structural conflict of interest given that USIC is both the claims administrator and insurer. The court disagrees. Although the conflict should be considered as a factor in determining whether there was an abuse of discretion, Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1053 (8th Cir. 2011), there is no hint of evidence in this case that the conflict influenced USIC's decision.

Under the abuse of discretion standard, the court will uphold USIC's benefits decision if it was supported by substantial

12

evidence. <u>McGee v. Reliance Standard Life Ins. Co.</u>, 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citation and internal quotation marks omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. <u>Id.</u> "When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." <u>King v. Hartford Life & Accident Ins. Co.</u>, 414 F.3d 994, 999 (8th Cir. 2005) (citation and internal quotation marks omitted).

Under the Policy, Jueneman is disabled if, after 36 months of disability, her injury prevents her from performing at least one of the material duties of each gainful occupation for which she is educated, trained, and experienced. Admin. R. at 6. The Policy states that USIC will provide quality of care services at its discretion to assist policyholders in returning to work, and it did so here. Id. at 23. Specifically, through such services, USIC helps the insured develop an appropriate medical plan, including arranging second medical opinions or speciality consultations and recommending therapeutic programs. Id. Once a quality of care program is implemented, the policyholder must comply with its terms

13

to continue to receive benefits.  Id. at 24.  The Policy expressly states that coverage will be discontinued if the policyholder fails to "comply with [the] plan without good cause."  Id.

Jueneman argues that USIC abused its discretion by ignoring Policy language that excused her from completing the work-hardening program for good cause.  The court disagrees.  First, the record establishes that USIC applied the "good cause" standard in assessing Jueneman's claim initially and on appeal.  See id. at 689-691, 778, 1068-69.  The reviewing physician evaluated all medical records, including those from Dr. Will, in making her determination that Jueneman was "limited only by [her] subjective complaints of pain and poor tolerance for activities" and that such complaints were insufficient proof of good cause.  Id. at 691.  The mere fact that USIC disagreed with Jueneman about whether such good cause existed does not mean that USIC failed to follow its own policies and procedures.

Second, the record overwhelmingly supports USIC's determination that Jueneman did not have good cause for failing to comply with the program.[4]  Good cause is defined as a "medical reason preventing implementation of the plan."  Id. at 24. Jueneman argues that she met this standard through her subjective

---

[4] The record also overwhelmingly supports USIC's conclusion that Jueneman is not disabled under the Policy, but Jueneman does not dispute that determination.  Jueneman focuses solely on whether USIC properly applied the good-cause standard.

14

complaints of pain, which are supported by her most recent treating physician, Dr. Will. Notably, Dr. Will also based his conclusion that Jueneman could not return to work (and, implicitly, could not complete the program) on her subjective complaints, specifically noting that her pain was "unfortunately not supported by her physical findings." Id. at 745. In other words, Dr. Will had no objective medical data to corroborate Jueneman's subjective complaints. "[I]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir. 2006). Furthermore, the objective evidence – for example, the many diagnostic tests performed by Jueneman's former treating physicians, the FCE, the surveillance footage, and the notes from Saunders documenting Jueneman's performance during the work-hardening program – amply supports USIC's conclusion that Jueneman did not establish good cause. USIC considered Dr. Will's opinion, but reasonably rejected it in favor of the substantial and consistent objective data presented. See Admin. R. at 690-91, 778, 1071-72.

Jueneman argues that Dr. Will's opinion should be given greater weight as her treating physician.[5] Opinions of treating

---

[5] Jueneman ignores the fact that her previous treating physicians determined that she could return to work with limitations and that Dr. Britton specifically authorized and helped design the work-hardening program. Indeed, Jueneman ignores the
(continued...)

physicians, however, are not automatically entitled to greater weight than those of reviewing physicians. See Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) ("[T]reating physicians are not automatically entitled to special weight in disability determinations under ERISA."). Rather, a "plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physician unless the record does not support the denial." Id. (citation and internal quotation marks omitted). As already explained, substantial evidence in the record supported the denial of benefits, and as a result, USIC did not abuse its discretion by crediting the opinions of its reviewing doctors and Jueneman's former treating physicians.

Although Jueneman may well suffer from chronic pain, it does not automatically follow that she was unable to fully participate in and complete the work-hardening program or that she is unable to return to work. Based on the exhaustive record, the court is satisfied that substantial evidence supported USIC's denial of Jueneman's claim for long-term disability benefits.

---

[5](...continued)
vast majority of evidence set forth in the administrative record, focusing instead on her subjective complaints and Dr. Will's opinion based on those subjective complaints.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment by defendant [ECF No. 21] is granted; and

2. The motion for summary judgment by plaintiff [ECF No. 23] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 23, 2014

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court